FILED
2012 MAR 28  PM 4: 19

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ OS
        DEPUTY

| | | |
|---|---|---|
| IN RE: 804 CONGRESS, L.L.C., | § | |
| | § | |
| WELLS FARGO BANK, N.A. AND | § | |
| GRETA GOLDSBY, | § | |
| SUBSTITUTE TRUSTEE, | § | |
| APPELLANTS, | § | |
| V. | § | CAUSE NO.  A-11-CA-360 LY |
| 804 CONGRESS, L.L.C., | § | BANKRUPTCY NO. 10-12184-CAG |
| APPELLEE. | § | |

| | | |
|---|---|---|
| IN RE: 804 CONGRESS, L.L.C., | § | |
| | § | |
| GRETA GOLDSBY, | § | |
| SUBSTITUTE TRUSTEE, | § | |
| APPELLANT, | § | |
| V. | § | CAUSE NO.  A-11-CA-391 LY |
| 804 CONGRESS, L.L.C., | § | BANKRUPTCY NO. 10-12184-CAG |
| APPELLEE. | § | |

| | | |
|---|---|---|
| IN RE: 804 CONGRESS, L.L.C., | § | |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| APPELLANT, | § | |
| V. | § | CAUSE NO.  A-11-CA-392 LY |
| 804 CONGRESS, L.L.C., | § | BANKRUPTCY NO. 10-12184-CAG |
| APPELLEE. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are the above styled and numbered related bankruptcy appeals.  Appellants

Wells Fargo Bank, N.A., a secured creditor, and Greta Goldsby, a substitute trustee pursuant to a

deed of trust central to these appeals, contend that the bankruptcy court erred in rendering three

orders in Appellee 804 Congress, L.L.C.'s Chapter 11 bankruptcy proceeding:  (1) Final Order on

Motion To Authorize Distribution of Proceeds signed March 9, 2011 (Bankr. Clerk's Document No. 116); (2) Order on Objection to Claim of Greta Goldsby, Trustee signed March 14, 2011 (Bankr. Clerk's Document No. 122); and (3) Order on Objection To Claim of Wells Fargo signed March 28, 2011 (Bankr. Clerk's Document No. 139). This court ordered the parties to file combined briefing and set one oral argument for the three separately docketed appeals (Clerk's Document No. 6). The parties submitted briefing, and on August 12, 2011, the court held oral argument on the appeals. At issue is whether the bankruptcy court has jurisdiction over the proceeds generated from a foreclosure sale that occurred after the bankruptcy court granted Wells Fargo relief from the automatic stay in order to proceed with the foreclosure under Texas law. Having considered the parties' briefing and arguments, the bankruptcy court's orders, the record before the bankruptcy court, and the applicable law, the court is of the opinion that the bankruptcy court lacked jurisdiction over the proceeds and erred in rendering each of the orders. The court will sustain Wells Fargo and Golsby's appeals, reverse the bankruptcy court's orders, and remand the action to the bankruptcy court for further proceedings.

***Background***

On May 31, 2006, 804 Congress purchased real property and improvements consisting of an office building in Austin, Travis County, Texas (the "Property"). In connection with the acquisition, 804 Congress obtained a purchase-money loan from Wells Fargo in the amount of $3,062,500, which was evidenced by a Real Estate Lien Note ("Note") dated May 31, 2006, payable to Wells Fargo. To secure repayment of the loan, 804 Congress executed and delivered a Deed of Trust Security Agreement/Financing Statement dated May 31, 2006 ("Deed of Trust"), granting Wells Fargo a purchase-money first-priority lien against the Property.

2

The Deed of Trust provides that, in the event of a default, Wells Fargo, as beneficiary under the Deed of Trust, may direct the trustee to foreclose the lien granted by the Deed of Trust and disburse the proceeds consistent with the Deed of Trust.

804 Congress is a limited liability company whose sole asset was the Property. In August 2009, 804 Congress defaulted under the terms of the Note as well as a separate promissory note with VIA Lending, a secured creditor with a subordinate second lien against the Property. VIA Lending posted the Property for foreclosure. Soon after, 804 Congress filed its first bankruptcy petition under Chapter 11 of the Bankruptcy Code, which stayed VIA Lending's scheduled foreclosure sale of the Property. *See In re 804 Congress LLC*, No. 09-12482 (W.D. Tex. Bankr. Sept. 1, 2009).

804 Congress sought leave of the bankruptcy court to sell the Property free and clear of liens. *See* 11 U.S.C. § 363(f).[1] After reviewing several contracts signed by representatives of a prospective third-party buyer, the bankruptcy court approved a Section 363(f) sale of the Property.

Shortly before the sale was to close, Wells Fargo learned that the prospective buyer had defaulted on the sales contract. Additionally, 804 Congress stated that it would continue to operate the Property only until January 31, 2010. Upon learning of 804 Congress's intent to abandon the Property, the United States Trustee moved the bankruptcy court to convert the Chapter 11 proceeding to a Chapter 7 proceeding or dismiss the case. The bankruptcy court dismissed the bankruptcy.

Wells Fargo became a mortgagee-in-possession, installed a management company to operate the Property, and funded the operational cash shortfalls to preserve the value of the Property in

---

[1] Section 363(f) provides that a bankruptcy trustee may sell property free and clear of any interest of an entity other than the bankruptcy estate only if certain conditions apply. 11 U.S.C. § 363(f).

preparation for a foreclosure sale.  On June 14, 2010, Wells Fargo appointed Goldsby substitute trustee under the Deed of Trust.[2]

Wells Fargo posted the Property for foreclosure and scheduled a July 6, 2010 foreclosure sale.  Prior to the July 6 sale, 804 Congress notified Wells Fargo that it had received a purchase agreement from a prospective third-party purchaser.  On July 2, 2010, Wells Fargo and 804 Congress executed a Forbearance Agreement ("Agreement") whereby Wells Fargo agreed to pass the scheduled July 6 foreclosure sale, subject to certain terms and conditions that allowed Wells Fargo to take all necessary and reasonable steps to prepare for a nonjudicial foreclosure sale of the Property on August 3, 2010.  Wells Fargo and 804 Congress  agreed that if 804 Congress filed a new bankruptcy petition, Wells Fargo would be entitled "to the lifting of the automatic stay without the necessity of an evidentiary hearing, without the necessity or requirement [] to establish or prove up the value of the Property covered by the Deed of Trust, or the necessity of proving lack of adequate protection of [Wells Fargo's] interest in the Property covered by the Deed of Trust."  Further, they agreed that the lifting of the automatic stay "by an appropriate bankruptcy court shall be deemed for cause."  *See* 11 U.S.C. § 362(d).

804 Congress filed a second Chapter 11 bankruptcy petition on August 3, 2010, hours ahead of the scheduled foreclosure sale of the Property the same day.  Soon after, Wells Fargo requested relief from the bankruptcy court from the automatic stay,[3] or in the alternative, that the bankruptcy court dismiss 804 Congress's bankruptcy.  Wells Fargo argued that it had shown cause for the bankruptcy court "to allow [Wells Fargo] to take any and all steps necessary under applicable non-

---

[2] For simplicity, the court refers to Goldsby as the "trustee."

[3] *See* 11 U.S.C. § 362(a).

4

bankruptcy law and the applicable loan documents to foreclose, liquidate, or otherwise take possession, custody or control of the Property." *See* 11 U.S.C. § 362(d)(1); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072-73 (5th Cir. 1986).

After hearing argument on Wells Fargo's motion, the bankruptcy court ordered that

> Wells Fargo is entitled to conditional relief from the automatic bankruptcy stay to permit it to post the [Property] for a foreclosure sale subject to certain contingencies which can further postpone any such foreclosure sale to afford [804 Congress] an opportunity to complete a possible sale of the [P]roperty to [a third party].

The bankruptcy court further permitted Wells Fargo to post the Property for a foreclosure sale to occur on September 7, 2010, in accordance with applicable Texas law, if any of three conditions were not met by 804 Congress. 804 Congress failed to meet the conditions, and Wells Fargo proceeded with the scheduled September 7 foreclosure sale under Texas law.[4]

On September 7, Goldsby conducted the foreclosure sale and sold the Property to a third party who was the highest bidder, for $4,355,000. Goldsby turned to the Deed of Trust for her duties following foreclosure. The Deed of Trust provides that the trustee shall

> from the proceeds of the sale, pay, in this order:
> (a)     expenses of foreclosure, including a commission to Trustee of 5% of the bid;
> (b)     to [Wells Fargo], the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
> (c)     any amounts required by law to be paid before payment to [804 Congress]; and
> (d)     to [804 Congress], any balance.

---

[4] In a final attempt to stop Wells Fargo's foreclosure, 804 Congress filed a motion for sale not in the ordinary course of business, which requested that the bankruptcy court allow 804 Congress to sell the Property to a third party by September 3, 2012. *See* 11 U.S.C. § 363(b). That sale did not occur and the motion was withdrawn; the bankruptcy court did not rule on the motion.

In calculating the amounts of the various payments and the order of payment, Goldsby determined that after paying first the expenses of foreclosure, including her 5% trustee's commission, the full amount of the principal, interest, attorney's fees, and other charges to Wells Fargo, and the entire debt owed to VIA Lending, there would be $221,695.72 in excess proceeds remaining, which Goldsby intended to pay 804 Congress.[5]

What was Goldsby to do with the proceeds she determined were payable to 804 Congress? Her problem was that 804 Congress lacked a debtor-in-possession account into which Goldsby could deposit the excess proceeds. Given this fact, Goldsby filed a "Motion To Approve Distribution of Suplus Proceeds From Foreclosure Sale to Debtor's Counsel," requesting that the bankruptcy court allow her to deposit the excess proceeds from the foreclosure sale into the trust account of 804 Congress's attorney.

The United States Trustee objected to Goldsby's request, contending that

> the proceeds must be deposited in a debtor in possession bank account. Because [804 Congress] has not opened such an account and for other cause, the [United States Trustee] asserts that this case should be converted to a case under Chapter 7. The [United States Trustee] has filed a motion to convert this case to a case under Chapter 7. The [United States Trustee] does not object to the distribution of surplus proceeds to the Chapter 7 Trustee after he is appointed.

---

[5] Goldsby calculated the payments to be made from the foreclosure proceeds as follows based on the priority set forth in the Deed of Trust: (1) expenses of foreclosure, including Goldsby's 5% commission, in the sum of $217,750; (2) to Wells Fargo $3,278,146.35; (3) to VIA Lending, $618,639.28; and (4) to 804 Congress the remaining surplus proceeds, $240,464.37. Later, Wells Fargo reported additional management fees and expenses of $18,768.65, which ultimately increased Wells Fargo's indebtedness to the sum $3,296,915, and decreased 804 Congress's portion a like amount to $221,695.72.

In light of the objection, Goldsby withdrew her request. 804 Congress's bankruptcy continued under Chapter 11.

On November 23, 2010, 804 Congress filed a Plan of Reorganization and Disclosure Statement, which provided "the only personal property which the Debtor owns is a claim to the excess proceeds from foreclosure." 804 Congress's operating reports filed November 30 reflected that the bankruptcy estate was claiming surplus foreclosure proceeds as "Funds held in Trust/Foreclosure disbursement," in the amount of $240,464.37, more of the foreclosure-sale proceeds than Goldsby had calculated for 804 Congress.

At a December 6, 2010 hearing, after recognizing that Goldsby was not seeking the bankruptcy court's approval of the manner in which the sales proceeds would be distributed, but only where Goldsby should deposit 804 Congress's portion of the sale proceeds, 804 Congress objected to the payment of Goldsby's commission and some of Wells Fargo's fees and expenses out of the foreclosure proceeds. The bankruptcy court indicated that the court would review to whom and in what amounts payments would be made from the foreclosure-sale proceeds.

Wells Fargo and Goldsby then filed proofs of claim for the amounts that they believed they were entitled from the sale proceeds.

### *804 Congress's objections and motion*

804 Congress filed objections to each proof of claim. Additionally, 804 Congress filed a Motion to Authorize Distribution of Proceeds, which acknowledged that "[u]nder Texas law, [Goldsby] is required to pay the proceeds in the manner dictated by the Texas Property Code. However, the Bankruptcy Court retains jurisdiction to approve reasonable costs and fees pursuant

to [Bankruptcy Rule of Procedure] 2016 and [Bankruptcy Code] Section 506(b)."[6]  804 Congress argued that the bankruptcy court should pay the undisputed principal and interest to Wells Fargo and to VIA Lending and then order Goldsby to pay the remaining foreclosure proceeds to a debtor-in-possession account pending further court order.

With regard to Goldsby's 5% commission claim, 804 Congress argued that the charge should be denied because it was not incurred by the actual creditor, Wells Fargo, and is unreasonable. Further, 804 Congress argued that a portion of Wells Fargo's prepetition and all of its post-petition

---

[6]  Bankruptcy Rule 2016(a), which addresses compensation for services rendered and reimbursement of expenses, provides:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Rule 2016 continues with information that is required to be included in an application for compensation.  Also, Rule 2016 states:

> The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.

Title 11 Section 506(b) of the Bankruptcy Code, which addresses determination of secured status, provides:

> To the extent that an allowed secured claim is secured by property the value of which, afer any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest in such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Because this court holds that the bankruptcy court lacks jurisdiction over the proceeds of the sale of the Property, these provisions are inapplicable.

8

attorney's fees should be denied, because Wells Fargo failed to substantiate these claims with detailed billing records.

Goldsby disputed 804 Congress's argument, contending that she was "opposed to the distribution of her commission payable under the Deed of Trust or any amounts that do not constitute property of the bankruptcy estate under *Butner v. United States*, 440 U.S. 59, 99 (1979) to the debtor-in-possession account." Goldsby argued that 804 Congress is only entitled to receive proceeds from the foreclosure sale, if any, that would be considered property of the bankruptcy estate, and that 804 Congress miscalculated its portion of the proceeds.

The bankruptcy court held a hearing on 804 Congress's objections to Goldsby and Wells Fargo's proofs of claim and 804 Congress's motion to authorize distribution of funds. Wells Fargo and Goldsby's position was, *inter alia*, that the bankruptcy court lacked jurisdiction over the foreclosure proceeds and, rather than the bankruptcy court reviewing the proofs of claim, Goldsby's commission and Wells Fargo's attorney's fees should be allowed and paid to them from the foreclosure proceeds, as the issue is a matter of construction of the Deed of Trust and Texas law. 804 Congress posited that the bankruptcy court had jurisdiction to consider and approve reasonable costs and fees, which 804 Congress contends includes Goldsby's commission and Wells Fargo's attorney's fees. *See* 11 U.S.C. § 506(b); Fed. R. Bankr. P. 2016.

### *Bankruptcy court's findings and orders*

On February 28, 2011, the bankruptcy court rendered findings from the bench. The bankruptcy court noted that Wells Fargo correctly cited the court to Texas case law for the proposition that a trustee is entitled to a 5% commission when it conducts a foreclosure sale and that it was proper to deduct from the proceeds any attorney's fees. Further, the bankruptcy court found

that it had jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A) (Administration of the Estate and Payment of Claims). The bankruptcy court also found that it's determination of "the excess proceeds is a function above, Section 502 and 506(b) of the Bankruptcy Code."

The bankruptcy court then found that "Wells Fargo was entitled to payment at the non-default rate through foreclosure." Additionally, the bankruptcy court found that "Wells Fargo is entitled to the entire cost of operating expenses" upon taking over management of the Property, its appraisal fee, and the environmental assessment.

As to Goldsby's claim, the bankruptcy court "pointed out and what is undisputed" is that Goldsby is an attorney for a law firm, and that Wells Fargo is not responsible for paying her fees, that rather the property surplus would be the basis for paying the fee. The bankruptcy court then found that

> based on the evidence provided to the court, her fee is subject to the same scrutiny as the [attorney's] fee under Bankruptcy Code Section 506 and also Federal Rule of Bankruptcy Procedure 2016. . . . [Goldsby] did provide enough testimony to demonstrate that the Court will find that she did employ 20 hours of work at her billing rate of $375 such that she is allowed a fee of [$7,500].

With regard to Wells Fargo's post-petition attorney's fees, the bankruptcy court noted that "it's uncontroverted that [the law firm] did not file a proof of claim in this case or an application under Rule 506(b) of the Bankruptcy Code or 2016(a)." The court denied the attorney's fees.

On March 8, 2011, the bankruptcy court rendered the Final Order On Motion to Authorize Distribution of Proceeds, which ordered and directed Goldsby to pay from the foreclosure proceeds: (1) the undisputed principal, interest, and expense amounts owing to Wells Fargo under Texas law; (2) ratified Goldsby's payment of principal and interest to VIA Lending; (3) a commission of $7,500

10

to herself; (4) the sum of $10,400 to the bankruptcy trustee; and (5) the remaining proceeds from the

foreclosure sale to 804 Congress to be held in a debtor-in-possession account pending further order

of the court. On March 14, 2011, the bankruptcy court rendered an order on 804 Congress's

objection to Goldsby's proof of claim, awarding Goldsby $7,500 of her claimed $217,750. On

March 28, 2011, the bankruptcy court rendered an order that allowed a portion of Wells Fargo's

claim but disallowed Wells Fargo's claim of $83,326.80 as attorney's fees related to the Property.

Wells Fargo and Goldsby timely appealed these three bankruptcy-court orders.

### Standard of review

On appeal this court may affirm, modify, or reverse the bankruptcy court's judgment, order,

or decree, or remand the matter at issue with instructions to the bankruptcy court to conduct further

proceedings. *See* Fed. R. Bankr. 8013. In reviewing a bankruptcy court's decision, this court

functions as an appellate court applying the standards of review generally applied in federal appeals.

*In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992). Subject-matter jurisdiction is reviewed *de*

*novo. See Lone Star Fund V, L.P. Barclays Bank PLC*, 594 F.3d 286 (5th Cir. 2010). District courts

review bankruptcy-court findings of fact for clear error and review legal conclusions and any mixed

questions of law and fact *de novo. Highland Capital Mgmt. LP v. Chesapeake Energy Corp.*, 522

F.3d 575, 583 (5th Cir. 2008).

### Analysis

Issue is joined regarding rights to the proceeds of the foreclosure sale. Before the court is

the issue of whether Goldsby's 5% trustee commission and portions of Wells Fargo's attorney's fees

incurred in foreclosing Wells Fargo's lien on the Property are recoverable under Texas law

independently of 804 Congress's bankruptcy proceedings or are these fees and charges incurred with

regard to the sale of property of the bankruptcy estate, which the bankruptcy court maintains jurisdiction to address.

To summarize the parties' positions, Goldsby and Wells Fargo argue that because the foreclosure sale was conducted outside the bankruptcy proceeding–the bankruptcy court lifted the automatic stay to allow the sale to occur under Texas law–the foreclosure-sale proceeds are not property of the bankruptcy estate, and the requested portions of the foreclosure proceeds never were property of the bankruptcy estate. They assert that, under governing Texas law, the only property of 804 Congress's bankruptcy estate was the remainder of the proceeds, if any, after all other charges against the proceeds were paid. Goldsby and Wells Fargo conclude that the bankruptcy court's orders should be reversed, because the bankruptcy court lacked subject-matter jurisdiction over the proceeds.

804 Congress argues that the bankruptcy court's lifting of the automatic stay to allow the nonjudicial foreclosure sale of the Property did not remove the Property from the bankruptcy estate. Rather, the lifting of the stay only allowed for the Property to be sold at foreclosure under Texas law and for the secured creditors to realize their security interests in the property. Any proceeds in excess of the creditors' secured interests were to be paid to 804 Congress as debtor-in-possession.

Under bankruptcy law, property of the bankruptcy estate includes all property, wherever located and by whomever it is held at the commencement of the bankruptcy proceeding, including "proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

12

"Property interests are created and defined by state law." *Butner*, 440 U.S. at 54-55 (courts look to state law to characterize "property rights in the assets of a bankrupt's estate"); *see also In re Laughlin*, 602 F.3d 417, 426 (5th Cir. 2010). Property of the debtor's bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *In re Boyd*, 11 F.3d 59, 60 (5th Cir. 1994).

Under Texas law, the power of the trustee to sell property for parties at a foreclosure sale is derived solely from the deed of trust. *See Conversion Props. v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.–Dallas 1999, pet. denied); *see also In re Home & Hearth Plano Pkwy.*, 320 B.R. 596, 603 n. 6 (Bankr. N.D. Tex. 2004). A deed of trust is governed by the same rules of interpretation that apply to contracts. *See Sonny Arnold, Inc. v. Sentry Savings Ass'n*, 633 S.W.2d 811, 815 (Tex. 1982). A trustee under a deed of trust is required to disburse the proceeds of a foreclosure sale as provided by Texas law. *See* Tex. Prop. Code Ann. § 51.0075(f) (West Supp. 2011). The trustee must "strictly pursue the terms of the instrument, the provisions of law relative to such sale, and the details prescribed as to the manner of the sale." *Kessler*, 994 S.W.2d at 813 (quoting *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.–Corpus Christi 1996, no writ)). If there are excess proceeds generated by the foreclosure sale after paying the trustee's fees and expenses and the existing indebtedness secured by the foreclosed lien, the proceeds are distributed to inferior lienholders or finally to the holder of the equity of redemption. *See Kessler*, 994 S.W.2d at 813; *see also In re Home & Hearth Plano Pkwy.*, 320 B.R. at 603 n. 6; *In re Keener*, 268 B.R. 912, 922 (Bankr. N.D. Tex. 2001) (quoting *Bonilla*, 918 S.W.2d at 23).

It is undisputed that the Property was an asset of the bankruptcy estate. The bankruptcy court granted Wells Fargo's request and lifted the automatic stay, which authorized Wells Fargo to post

the Property for foreclosure and to conduct a foreclosure sale in accordance with Texas law. *See* 11 U.S.C. § 362(d). By lifting the stay, the bankruptcy court allowed Wells Fargo to conduct a foreclosure sale outside of the bankruptcy proceeding and authorized the Property to be removed from the bankruptcy estate. *See e.g., In re Matheson*, 84 B.R. 435, 436-37 (Bankr. N.D. Tex. 1987). Once the stay was lifted, Wells Fargo exercised its state-law rights by selling the Property by nonjudicial foreclosure in accordance with Texas law. Some courts have held that once the automatic stay is lifted, the property that was subject to the stay ceases to be an asset of the bankruptcy estate. Others have held that property remains an asset of the bankruptcy estate, even after the stay is lifted, up to the moment of the foreclosure sale. *See In re Griggs*, 82 B.R. 532, 533 (Bankr. W.D. Mo. 1988) (once automatic stay lifted, property ceases to be property of estate); *Wilson v. Bill Barry Enters.*, 822 F.2d 859, 861 (9th Cir. 1987) (bankruptcy court relinquishes jurisdiction over estate property when it grants relief from automatic stay); *First Nat'l Bank of Md. v. United States Wall Corp., (In re Incor, Inc.)*, 113 B.R. 212, 215 (D. Md. 1990) (lifting automatic stay destroyed debtor's property interest); *Home & Hearth Plano*, 320 B.R. at 603 n.6 (property remained property of the estate even after stay lifted until estate's rights cut off by foreclosure). But once a foreclosure sale is completed, the bankruptcy estate's rights to the property are extinguished under either theory. *See Home & Hearth Plano*, 320 B.R. at 603 n.6. The bankruptcy court's jurisdiction lapses with its control of the property. *See In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1186 (7th Cir. 1986). Thus, upon the foreclosure sale, 804 Congress no longer had an interest in the Property and any interest 804 Congress would have in the Property's sale proceeds would be determined by reference to state law and the Deed of Trust. *Home & Hearth Plano*, 320 B.R. at 608; *See In re Cornerstone*, 416 B.R. 591, 605 (Bankr. E.D. Tex. 2008).

14

In reviewing *de novo* the bankruptcy-court record, at the time of its orders, the bankruptcy court lacked subject-matter jurisdiction over the Property.  Due to the lifting of the stay for the express, sole purpose of proceeding with a nonjudicial foreclosure sale, at the moment the sale of the Property occurred, all manner of interest in the Property and its proceeds were governed by Texas law rather than bankruptcy law.

The court holds that the bankruptcy court erred in exercising jurisdiction over the foreclosure-sale proceeds, as the proceeds were governed by Texas law.  The court will reverse the orders and remand this action for further proceedings with instructions that Goldsby disburse the foreclosure-sale proceeds in accordance with Texas law and the Deed of Trust.

**IT IS ORDERED** that Appellants Greta Goldsby and Wells Fargo's appeals are **SUSTAINED**.

**IT IS FURTHER ORDERED** that the bankruptcy court's Final Order on Motion To Authorize Distribution of Proceeds signed March 9, 2011 (Bankr. Clerk's Document No. 116); Order on Objection to Claim of Greta Goldsby, Trustee signed March 14, 2011 (Bankr. Clerk's Document No. 122); and Order on Objection To Claim of Wells Fargo signed March 28, 2011 (Bankr. Clerk's Document No. 139) are **REVERSED**.

**IT IS FURTHER ORDERED** that these actions are remanded to the bankruptcy court for further proceedings consistent with this opinion.

SIGNED this _28th_ day of March, 2012.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE